STATE OF CONNECTICUT *v.* ALFRED W. KOHLFUSS

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued May 4—decided June 1, 1965

*Herbert J. Bundock,* public defender, and *Alfred W. Kohlfuss,* pro se, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* assistant state's attorney, with whom, on the brief, were *Otto J. Saur,* state's attorney, and *John F. McGowan,* assistant state's attorney, for the appellee (state).

KING, C. J.  The defendant, Alfred W. Kohlfuss, was convicted in a trial to the court of the crime of

breaking and entering[1] a gasoline station on April 25, 1963, in Trumbull, in violation of § 53-76 of the General Statutes. Kohlfuss was represented by private counsel, selected and engaged by him, up to and including his conviction and the imposition of sentence in the Superior Court. Afterward, his counsel refused to take an appeal and ultimately was allowed to withdraw, and Kohlfuss undertook the appeal himself, the state supplying him with a transcript. The appeal came on for hearing before this court at the October, 1964, term and on the court's recommendation, made after inspection of the record and Kohlfuss' so-called "brief", Kohlfuss accepted the services of the public defender. The hearing was continued until the public defender had had an opportunity to consult with Kohlfuss, to procure such changes in the record, including an amended assignment of errors, as were necessary for the proper presentation of any claims of possible merit which Kohlfuss might have, and then to file a new brief in support of such claims. Actually, this took several months, and the appeal did not finally come before this court until the May, 1965, term. At the close of the arguments, counsel were asked to prepare a stipulation covering Kohlfuss' appearances in the state and federal courts. This was done in a stipulation of twenty-two items filed May 7, 1965. This stipulation has been used in this opinion in amplification and clarification of the finding. Attacks on four paragraphs of the finding as having been found without evidence are without merit. The claim that the conclusions of

---

[1] The crime charged is commonly referred to as statutory burglary. A history of our statutory variations and amplifications of the common-law crime of burglary will be found in *State* v. *English*, 132 Conn. 573, 576, 46 A.2d 121.

the court as to Kohlfuss' guilt were not supported by the subordinate facts of the finding is also without merit, although for reasons hereinafter stated that claim need not have been considered.

I

The first of the three basic claims of error raised in this appeal is a claim of disqualification on the part of Judge Louis Shapiro, who presided at the trial in the Superior Court on the breaking and entering case. The facts material to this claim will now be summarized. On November 15, 1960, Kohlfuss, also known as Kolfus, had pleaded guilty to a charge of robbery with violence, a crime for which the maximum permissible penalty is imprisonment for twenty-five years. General Statutes § 53-14. On November 29, he was sentenced on that plea to a term of not less than two nor more than seven years in the state's prison. On December 5, he chose to, and did, file an application for a review of the sentence by the sentence review division of the Superior Court. After hearing, the minimum sentence was increased from two to three years, thus leaving him with a sentence of not less than three nor more than seven years. He instituted an action of habeas corpus in the Superior Court on the ground that General Statutes § 51-196, insofar as it authorized the sentence review division to increase the sentence originally imposed, was unconstitutional. This proceeding was decided adversely to Kohlfuss' claim, and that decision, on July 27, 1962, was affirmed on appeal to this court in the case of *Kohlfuss* v. *Warden,* 149 Conn. 692, 694, 183 A.2d 626.

The present claim of disqualification is based on the fact that Judge Shapiro had been one of the three members of the sentence review division

which had heard Kohlfuss' application for review of the robbery sentence. On January 18, 1963, Kohlfuss had been released on parole on the robbery conviction but was arrested on April 25 of that year on the present charge of breaking and entering the gasoline station. A plea of not guilty was entered on May 7, 1963, and Kohlfuss elected a trial by a jury of twelve. On June 11, 1963, the trial in the Superior Court began before Judge Raymond J. Devlin and the jury, but a mistrial was declared on the same day. On September 24, 1963, Kohlfuss appeared in court for the new trial, accompanied by his private counsel, who had represented him throughout. At that time, Kohlfuss requested a change of election from jury to court, which was granted by Judge Shapiro, the judge regularly assigned to hold the criminal session, and immediately thereafter trial began. The trial was concluded the same day, and Kohlfuss was found guilty as charged.

After the finding of guilty, Kohlfuss was put to plea on the second part of the information, which charged him with being a "second offender" because of his previous conviction for robbery. To this second part of the information, he entered a plea of guilty, which will hereinafter be more fully discussed. After a presentence investigation, Kohlfuss, on October 11, 1963, was sentenced to not less than one nor more than eight years, to run consecutively with, and to commence on the termination of, the sentence under the prior robbery conviction.

In the first place, in a consideration of this claim of disqualification, it should be noted that the sentence review division has nothing to do with the ascertainment of guilt or innocence. Its powers are limited to a review of the sentence imposed. Gen-

eral Statutes §§ 51-195, 51-196. There had been no previous trial before Judge Shapiro in which a "new trial . . . [had been] granted, or in which the judgment . . . [had been] reversed by the supreme court of errors" within the provisions of § 51-41 of the General Statutes. Thus, there was not even a technical infraction of the disqualification provisions of that statute, as was the situation, for instance, except for the consent to the judge's trying the case, in *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480.

In the second place, under § 51-42, proceedings before a disqualified judge are not void but merely voidable. And under the last sentence of § 51-39, if consented to in open court, the proceedings may not afterward be attacked on appeal. See cases such as *State* v. *DeGennaro,* supra. At no time prior to adjudication of guilt was it called to the attention of Judge Shapiro that he had served as a member of the sentence review division which reviewed Kohlfuss' sentence for the robbery conviction, although that had been more than two years before. Rather, Kohlfuss made no claim of disqualification until after his conviction of breaking and entering. While he was evasive when questioned by this court, he seems to claim that he brought the matter to the attention of his private counsel at some time prior to sentencing. In any event, after adjudication of guilt, the question of disqualification was raised in a conference in chambers before Judge Shapiro, participated in by the assistant state's attorney prosecuting the case and Kohlfuss' private counsel. At that late date, Judge Shapiro decided to complete the case by ordering a presentence investigation and, subsequently, imposing sentence.

There is no basis for any claim, nor is any made, that Judge Shapiro recognized Kohlfuss as having been before the sentence review division when Judge Shapiro was a member of it or that Judge Shapiro had, or was given, any inkling during the breaking and entering trial that Kohlfuss had in mind making a claim of disqualification if the judgment went against him.

The sentence under the breaking and entering conviction is so lenient that it is obvious that Judge Shapiro was in nowise prejudiced against Kohlfuss subsequent to the conviction when the claim of disqualification was first mentioned.

On the other hand, there is no basis for any claim, nor is any made, that Kohlfuss himself did not recognize and remember Judge Shapiro, especially since the sentence review division had increased the minimum of the sentence on the robbery conviction.

Finally, Kohlfuss' conduct, especially in the light of his change of election from jury to court before the very judge who he now claims was disqualified to hear the case at all, can be construed only as consent in open court, which, under the last sentence in General Statutes § 51-39, disabled him from now claiming any disqualification on Judge Shapiro's part. *State v. DeGennaro,* supra.

## II

For convenience, we next consider the third and final basic claim made in Kohlfuss' brief, which is that there was error in sentencing Kohlfuss as a "second offender." To understand this claim some further facts are required. This appeal from the breaking and entering conviction of October 11, 1963, was filed by Kohlfuss on October 25, 1963.

During the pendency of this appeal, Kohlfuss filed two petitions for habeas corpus in the United States District Court for the District of Connecticut. The first, filed January 24, 1964, claiming double jeopardy, was denied on May 18, 1964. Another application for a writ of habeas corpus was filed on July 15, 1964, and was heard on September 1. This latter application was granted on October 13, 1964, in a judgment holding, in effect, that the state should have furnished counsel to Kohlfuss when he appeared before the sentence review division, and ordering a new hearing before that division, with counsel to be provided by the state. Pursuant to this mandate, a new hearing before the division was set for January 12, 1965, but Kohlfuss then refused to have his case heard and withdrew his application for a hearing. As a result of that action, on January 19, 1965, the United States District Court modified its original habeas corpus decision of October 13, 1964, so as to deny both Kohlfuss' request that he be discharged from prison and also his application for a writ of habeas corpus.

After the conviction on the breaking and entering charge, Kohlfuss was put to plea on the second part of the information charging him as a "second offender" under General Statutes § 54-118 because of his prior conviction for robbery. As provided by § 487 of the Practice Book, he had, before being put to plea on the breaking and entering charge, been informed by the clerk, in the absence of the court, of the contents of the second part of the information charging him with being a "second offender". Immediately before being put to plea on the "second-offender" part of the information, he admitted that he was the person described in

the judgment of conviction in the robbery case but stated that he had a "legal action still pending on it." A few moments later, when asked as to his plea on the second part of the information, he stated that "under the circumstances I will have to enter a plea of guilty . . . there is nothing else I could do your honor." It is important to bear in mind that he was still represented by his own private counsel, who was in court with him.

The "second-offender" statute applies only to a person convicted of a crime for which the punishment may be imprisonment in the state's prison, which of course was the case here under the charge of breaking and entering, and who has previously "been convicted of any crime and imprisoned therefor in the State Prison". Unless Kohlfuss had been legally imprisoned in the state prison for the robbery conviction, he would not come within the "second-offender" statute. See *State* v. *Lenihan*, 151 Conn. 552, 553, 200 A.2d 476 (quoting and explaining this statute); see also *State* v. *Couture*, 151 Conn. 213, 217, 196 A.2d 113. It is his claim that had he been given counsel before the sentence review division, instead of increasing his sentence the division might have suspended the sentence, or reduced it to a term in jail, and that in either case he would not have come within the scope of the "second-offender" statute and, therefore, could have been sentenced only as a first offender under the breaking and entering statute, which carries a maximum permissible penalty of but four years of imprisonment. General Statutes § 53-76.

In the first place, there was no action "pending" on the robbery conviction at the time of the sentencing in the breaking and entering case. Kohlfuss' appeal to this court from the robbery convic-

tion had been decided adversely to him on July 27, 1962. Although that appeal was concerned with the action of the sentence review division in increasing his minimum sentence, he made no mention of any claim of illegality arising from his lack of counsel before the division. The first time this claim was raised in any "legal action" was in an application to the Superior Court for a writ of habeas corpus. This application was not filed until May 26, 1964, and was denied on June 11, 1964. His petition to the federal court, raising the same claim, was not filed until July 15, 1964. Thus, on September 24, 1963, when he was called upon to plead to the second part of the information in this breaking and entering case, there was no action "pending" in any court raising the question of lack of counsel before the sentence review division. This fact is admitted in the original so-called "assignment of errors", which Kohlfuss himself wrote and which appears in the record. It is also admitted in the original brief, which he himself wrote. The most that Kohlfuss could possibly have claimed, if we assume his honesty, was that he was then contemplating the institution of a habeas corpus action raising that claim. Actually, he gave the court no inkling of what his claim was. In this court, he orally claimed that he had written a letter to someone about such an action, but on this he failed to elaborate. Obviously, Kohlfuss, if we accept his own claims at face value, terms a contemplated proceeding a "pending" proceeding. The robbery conviction was unattacked at the time he was called upon to plead to the second-offender charge under the second part of the information in the breaking and entering case. On that state of facts his plea of guilty was the only proper plea as far

as anything he or his counsel then told the court.

Furthermore, although the federal court, as previously pointed out, ultimately did grant him a new hearing before the sentence review division, that court, upon his refusal to avail himself of the new hearing, and his withdrawal of any application for review, modified its judgment to deny the habeas corpus application in toto. Thus, it is clear that through his own action, Kohlfuss has affirma tively blocked the sentence review division from hearing his application for review, a prerequisite to the division's right to make any change in the rob- bery sentence, including any change which would remove him from the operation of the second- offender statute as to the breaking and entering conviction. *Kohlfuss* v. *Warden,* supra. Conse- quently, his plea of guilty under the second- offender statute was the only plea which could reflect the facts as they now stand and as they stood at the time the plea was entered.

There was no error in the action of the court in receiving the plea of guilty on the second part of the information, even without any consideration of the obvious improbability that any attorney, however zealous and eloquent, could have persuaded the sentence review division to reduce Kohlfuss' robbery sentence to one of jail only, to say nothing of a wholly suspended jail or prison sentence.

### III

One of Kohlfuss' assignments of error, claiming that the subordinate facts in the finding were insuf- ficient to support the conclusions as to breaking and entering and theft of the safe, was not briefed and was properly treated by the state as abandoned. *Palega* v. *Bulgajewski,* 150 Conn. 695, 696, 186 A.2d

801. The defendant properly abandoned it, however, since another assignment of error, hereinafter discussed, to the effect that the evidence was inadequate to support the adjudication of guilt, was his remaining basic claim and fully protected his rights. *State* v. *Pundy*, 147 Conn. 7, 8, 156 A.2d 193.

The evidence material to this remaining basic claim may be rather briefly summarized. James Legoza, who was employed at the gasoline station, testified that on April 24, 1963, the night of the breaking and entering, at 9 o'clock in the evening, he shut off all the lights but one and locked all the doors, that the window of the men's room on the outside of the building was closed, and that the entrance door to the men's room is in the office within the station. David Tippett, owner of the station, testified that when he was called to the station by the police in the early morning of April 25, he found the floor safe outside the station in the driveway and missing from its accustomed place inside the station next to the men's room door. William W. Brennan, a police officer, testified that at 3:20 a.m. on April 25, he stopped his police car about ninety feet from the station when he saw two men, one of whom he recognized as Kohlfuss, coming from the front of the station carrying a large heavy object; that he moved his car to a point in back of the station and apprehended Kohlfuss and his companion, who were standing by a truck parked next to the station; that the large object was then seen to be a safe and was found where the men had put it down; that a check of the station disclosed the front door unlocked and ajar and the outside window of the men's room slightly open and unlocked; that on the sill of the men's room window, which was on the side of the station, was the print

of a ripple-sole shoe of the type and design worn by Kohlfuss that night; and that there was a scuff mark under the window sill of the men's room and white marks appearing to be paint marks on the front of Kohlfuss' left shoe. An unattacked finding is that the walls of the men's room were painted white. Donald Malatesta, a police officer, testified that at 2:55 a.m. on April 25 he checked the station, that the front door was locked and the windows on the side of the building were closed and that about twenty-five minutes later he returned to the service station and found Officer Brennan holding Kohlfuss and his companion at gunpoint.

The principal infirmity in the state's proof claimed by Kohlfuss is that unless the men's room window was closed, Kohlfuss could not be convicted of breaking and entering and that the state failed to prove that the window was closed. This claim is based on the fact that Legoza, at one point in his testimony, indicated uncertainty as to whether he remembered having closed the men's room window before leaving the station. Kohlfuss overlooks the testimony of Officer Malatesta, recited above, that the window was closed when he checked it at 2:55 a.m. Kohlfuss himself claims that he went into the gas station, apparently through the men's room window, only to relieve himself, and that this was why he was found just outside the station. Although he chose to, and did, take the stand in his own defense, Kohlfuss did not explain why his ascribed purpose in entering the building involved any moving of the safe by himself and his companion but contented himself with the claim that Brennan's attention would have had to be on his driving and that Brennan could not have observed Kohlfuss' connection with the safe.

There is no claim that anyone was around the station at the time except Kohlfuss and his companion. The evidence warranted the court's adjudication of guilt of breaking and entering with intent to steal.

Furthermore, Kohlfuss' claim apparently involves a misconception of the essential elements of the crime of breaking and entering, commonly termed "statutory burglary". No actual violence or damage need be done to the building. 13 Am. Jur. 2d, Burglary, § 8. It is enough to constitute a breaking, if an unlocked window, whether or not partially opened, is raised or further opened to admit a person's body, or if a door, even though unlocked or ajar, is opened for the same purpose. See cases such as *State* v. *Mele*, 125 Conn. 210, 213, 4 A.2d 336; 2 Wharton, Criminal Law and Procedure §§ 412, 413; 13 Am. Jur. 2d, Burglary, §§ 15, 16, 18. If Kohlfuss or his companion, in pursuance of a common purpose, raised the window in order to enter the station, and did enter it, with the requisite criminal intent to commit a theft or other crime therein, each would have committed the crime of breaking and entering. Only if the window was already opened to such an extent that entry was effected without opening it further, would there be no breaking in entering the station. There was testimony, as already pointed out, warranting the court in concluding that the window was closed.

But more important than all this, and practically conclusive of Kohlfuss' guilt, is that a breaking out is a sufficient breaking under our statute, even though there was no breaking of any kind incident to the original entry. Here, there was abundant testimony that the front door of the station was closed and that it was open and ajar when Brennan arrived and saw Kohlfuss and his companion carry-

ing the safe. The safe could hardly have been removed from the building except through the door, and the only reasonable inference is that the front door was opened to permit the safe to be carried out. This was a sufficient breaking to meet the requirements of our statute. *State* v. *Ward,* 43 Conn. 489, 493. The fact that no one actually saw Kohlfuss or his companion breaking into, or out of, the building, entering it, or even within it, would not preclude a conviction for statutory burglary if the circumstantial evidence was strong enough to prove guilt of the crime charged beyond a reasonable doubt, especially in view of the testimony Kohlfuss himself gave. See cases such as *State* v. *DelVecchio,* 145 Conn. 549, 551, 145 A.2d 199; *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322; *State* v. *Spalding,* 19 Conn. 233, 237. The evidence as outlined above was not only adequate to support the court's conclusion of guilt but was so strong as to make any other conclusion virtually impossible.

There is no error.

In this opinion the other judges concurred.