STATE of Maine

v.

Russell ROPER.

Supreme Judicial Court of Maine.

Argued May 5, 1980.

Decided Aug. 20, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Richard L. Currier, Law Student (orally), for plaintiff.

William F. Gore, Portland (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

Defendant Russell Roper appeals from a judgment of conviction of burglary, 17–A M.R.S.A. § 401 (Supp.1979), and theft, 17–A M.R.S.A. § 353 (Supp.1979), entered on the verdict of a Superior Court jury, Cumberland County. The case against defendant depended on the state's showing that Roper was in exclusive possession of at least some of the stolen goods on the morning after the burglary so that the jury could draw the statutory inferences of guilt from possession permitted under § 361(2) of Title 17–A M.R.S.A.[1] On appeal defendant asserts that the evidence was insufficient to sustain his conviction for either theft or burglary because the state failed to prove that defendant was in exclusive possession of goods that had been taken under circumstances constituting a violation of 17–A M.R.S.A. §§ 353 and 401. We sustain the appeal.

On December 6, 1978, the Cumberland County Grand Jury returned an indictment against defendant which charged:

COUNT I: That on or about the Ninth day of November, 1978, in the City of Portland, County of Cumberland, and State of Maine, the above named defendant RUSSELL ROPER did enter a structure, namely, a place of business, the property of Alfred Waxler doing business as Auto Land, located at 22 Ocean Avenue, in said Portland, knowing that he was not licensed or privileged to do so, with the intent to commit theft therein, and

COUNT II: While therein, the above named defendant RUSSELL ROPER did commit theft by obtaining or exercising unauthorized control over the property of Alfred Waxler, namely, one Papermate pen, one set of house keys, assorted bottles of liquor, one silver flask, and three books of green stamps, of an aggregate value less than Five Hundred Dollars, ($500.), with the intent to deprive the said Alfred Waxler, thereof.

The evidence adduced at trial reveals that on November 9, 1978, Alfred Waxler arrived at his place of business and discovered that during the night someone had entered the premises by forcing a panel in the rear door. Certain items owned by him were missing.

During the morning of November 9, defendant Roper was brought into the emergency room of Mercy Hospital by Medcu, an emergency ambulance service, in a lethargic state which hospital personnel decided was the result of an overdose of an unidentified substance. Shortly thereafter, Carol Dunphe, a nurse on duty, observed Medcu persons bring a cardboard box and two briefcases into the emergency room and place them by a bench near the nurses' station. Concerned that a liquid she observed leaking from "some type of kerosene lamp" in the box might be dangerous, Nurse Dunphe searched the box and briefcases. Among the contents observed by Dunphe were several bottles of liquor. In an attempt to identify what substance the defendant had ingested, Dunphe searched his clothing. In his coat pockets she found two prescription bottles containing tetracycline and teldron, each with Alfred Wax-

---

1. Title 17–A M.R.S.A. § 361(2) provides:

2. Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also shall give rise to a presumption that the defendant in exclusive possession of property recently so taken is guilty of the burglary.

ler's name on it. She also found an unfilled prescription in Waxler's name. Dunphe reported the incident to the Portland Police Department. Detective Wark, who responded to the call, took the prescription bottle of tetracycline to Waxler, who identified it as his property. Waxler later identified the box and briefcases and their contents as his.

At trial, soon after Nurse Dunphe began testifying for the state, defense counsel called for a sidebar conference at which he expressed concern lest the prosecution seek to elicit hearsay testimony from Dunphe about what the Medcu attendant may have told her about certain property. In spite of the court's caution to the witness that she confine her statements to her direct observations and not say what she had been told by someone else, she testified that soon after Roper had been brought into the emergency room she heard somebody dragging in boxes and looked up, "and Medcu was bringing in a cardboard box and two attaché cases that they said belonged to Mr. Roper." Defense counsel's objection was promptly sustained, but the court did not order the hearsay stricken and gave no cautionary instruction to the jury then or later telling them to disregard the hearsay statement of Nurse Dunphe.

At trial, the bottle of tetracycline was entered in evidence as the state's only exhibit. Waxler was unable to state with certainty when the prescription bottle was taken. On cross–examination he revealed that the last time he had seen the bottle, which he kept in the medicine cabinet at Auto Land, was. a week or two before the break. He testified that he had employed defendant Roper at Auto Land from the spring of 1977 to December, 1977.

At the close of the state's case, defendant moved for a judgment of acquittal, which was denied. The defense rested without presenting any evidence.

In proving defendant guilty of theft, the state relied on the statutory permissible inference that a defendant is guilty of theft if it is proved that he was in exclusive possession of property recently taken by theft. 17–A M.R.S.A. § 361(2), *supra* note 1. The only property identified as Waxler's that the prosecution proved was in defendant's possession was the prescription bottle containing tetracycline. Except for the hearsay statement attributed by Nurse Dunphe to Medcu persons, correctly ruled inadmissible by the trial court, that the box and briefcases "belonged to" defendant, the only evidence linking defendant to those stolen items was the fact that Medcu persons brought them into the hospital soon after Medcu persons brought in Roper. No Medcu person ever testified, and Nurse Dunphe never even testified that the Medcu persons who brought defendant into the emergency room were the same individuals who brought in the box and briefcases.[2]

■■■ The mere fact that the box and briefcases were delivered by Medcu to the hospital emergency room soon after Roper was taken there by Medcu is legally insufficient as evidence proving beyond a reasonable doubt that they had been in Roper's possession, at least to serve as the basis for the further inference that Roper was guilty of theft of those items by virtue of section 361(2), *supra* note 1. That evidence is not rendered sufficient by the evidence that Roper had on his person the bottle of tetracycline belonging to Waxler. Nothing in Waxler's testimony tended to establish any connection between the tetracycline and the items brought into the hospital by Medcu

2. This is not a case where the state has proved that defendant was ever in the presence of any of the stolen goods described in the indictment or had any kind of constructive possession of them. *Cf. State v. Field*, Me., 383 A.2d 1390 (1978) (mere presence as passenger in vehicle in which stolen goods found, without exercise of control of vehicle or goods, insufficient to support larceny conviction); *State v. Dall*, Me., 305 A.2d 270 (1973) (mere presence will not support finding of possession and will not alone raise an inference of possession unless illuminated by other facts); *State v. Barrett*, Me., 256 A.2d 666 (1969) (mere constructive possession of premises in which stolen goods are stored is insufficient absent an exercise of dominion, control and right of disposal).

except Waxler's common ownership. Evidence of the location of all the items at Auto Land could not support an inference of constructive possession of the box and briefcases through possession of the tetracycline. The jury should have been instructed that the evidence was insufficient to find Roper guilty of theft of the contents of the box and the briefcases and their contents.

The evidence might have sufficed as a basis for a permissible inference that Roper stole the tetracycline–although, weighing all the evidence on that question, the jury might well have declined to draw that inference. But the evidence of possession of the tetracycline had no tendency to prove the charge of theft of the items of Waxler's property specified in the indictment. Defendant's motion for a judgment of acquittal on the theft charge should have been granted for lack of proof that defendant was ever in possession of any of the items described in the indictment as having been stolen.

The state asserts that even if the theft conviction is overturned, the burglary conviction should be affirmed. We conclude, however, that the erroneous conviction for theft, coupled with the court's failure to charge the jury in a manner that clearly distinguished the evidentiary significance of the tetracycline on the one hand and that of the box and briefcases and their contents on the other, deprived defendant of a fair trial. On that basis, we sustain defendant's appeal as to the burglary conviction.

▬▬ The state's case on the burglary count is based on the premise that the jury could properly draw the inference, permitted under section 361(2), that defendant was found in exclusive possession of property recently taken from Waxler by theft under circumstances constituting a burglary. To support such an inference, independent evidence must establish beyond a reasonable doubt that the theft occurred during the burglary charged in the indictment. *State v. Salisbury,* Me., 417 A.2d 431 (1980); *State v. Reed,* Me., 347 A.2d 123 (1975). *See State v. Mimmovich,* Me., 377 A.2d 116, 118 (1977). The evidence was insufficient to permit the inference that defendant was ever in possession of either the contents of the box or of the two briefcases and their contents. However, the tetracycline was found in defendant's coat pocket according to Nurse Dunphe's testimony. That evidence was admissible to support the inference of guilt of burglary even though the indictment did not charge theft of that particular item. *State v. Burnham,* Me., 350 A.2d 577 (1976). Therefore, the evidence could have been sufficient to support the burglary conviction if the jury found beyond a reasonable doubt that the tetracycline was taken from Auto Land during the burglary and that it was in defendant's exclusive possession the next morning. If the issue were simply the sufficiency of the evidence on this point, we could uphold the burglary conviction despite Mr. Waxler's inability to testify with certainty when he had last seen the tetracycline. *See State v. Salisbury, supra.*

However, there is an additional problem. As one of his points on appeal, defendant complains that the trial court's instructions to the jury could have misled them into believing that it was sufficient to convict if they found merely that the box and briefcases and their contents were stolen during the burglary and that defendant was in exclusive possession of Waxler's tetracycline the next morning. We agree.

After the presiding justice completed his charge to the jury, but before the jury retired, defendant requested that an additional instruction be given, as follows:

> You must be satisfied beyond a reasonable doubt that the property you find to be in the exclusive possession of the defendant, if you find any such property being in his exclusive possession, was taken during the burglary which took place on November 9, 1978.

The court agreed to give the instruction although "without separat[ing] it in terms of pill bottle or the other." The instruction given was as follows:

> One final comment before you deliberate and that is that I just remind you

that, of course, if you don't find any property was taken or you determine from your deliberations that none of the property that was either testified to or was testified to was taken, even though you might conclude a break did occur–a burglary may have occurred and theft may have occurred to Mr. Waxler on the date in question, but if you find that the property was not the property, any or part of it, that belonged to Mr. Waxler then, of course, you must return a verdict of not guilty. I trust that goes without saying. That's an element you must prove, that there was property taken, and I told you what those elements are.

Defendant did not object to the instruction as it was given. The error which defendant now raises on appeal was not preserved, and we must therefore treat the issue in the context of obvious error resulting in manifest injustice.

 Hearsay testimony was presented to the jury that the box and briefcases had been in defendant's possession and were believed to be his. Although an objection to that testimony had been sustained, the jury was never instructed that the testimony was not evidence. Indeed, the presiding justice stated during a conference at sidebar, "There's been testimony that the property arrived with [defendant] which may have a legal interpretation to be in his exclusive possession including the pill bottle." Holding this erroneous impression of what the admissible testimony had established, the court refused to give defendant's requested instruction in terms that would have distinguished between the tetracycline and the boxes and briefcases. Because the evidence was legally insufficient to establish defendant's possession of the box and briefcases, the jury was entitled to return a burglary conviction only if they found that defendant was in exclusive possession of the tetracycline and that the tetracycline had been taken from Auto Land during the burglary on the night of November 8–9. However, the jury was never so instructed.

 Under the court's instruction, the jury could have erroneously believed that there was competent evidence of defendant's possession of the box and briefcases. This misperception pervaded the entire trial. We cannot say that the jury must have necessarily found beyond a reasonable doubt that Roper took the tetracycline during the burglary. We must conclude, therefore, that defendant was deprived of a fair trial on the burglary charge. *See State v. Fitanides*, Me., 373 A.2d 915 (1977). *Cf. State v. Mimmovich*, Me., 377 A.2d 116 (1977).

The entry is:

Appeal sustained.

Judgment of conviction vacated.

Entry of judgment of acquittal ordered on Count II, theft.

Remanded for further proceedings consistent with the opinion herein.

All concurring.